# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

William Arnold Schultz,

      Debtor.

_____

William Arnold Schultz,

      Plaintiff,

      v.

U.S. Department of Education,

      Defendant.

Chapter 7
Bankruptcy Case No. 13-31042

Adversary Proceeding No. 19-03031

## ORDER DISMISSING THE COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

At Saint Paul, Minnesota.

Plaintiff William Arnold Schultz ("Debtor") commenced this adversary proceeding against Defendant U.S. Department of Education ("ED") on April 1, 2019. The Debtor sought a discharge of student loan debts pursuant to 11 U.S.C. § 523(a)(8). Dkt. No. 30. ED answered on October 16, 2019, raising the affirmative defense of failure to state a claim upon which relief can be granted and thereafter moved to dismiss the case. Dkt. Nos. 40; 43. ED argued that since the Debtor entered into a new postpetition consolidated loan after the bankruptcy case was filed paying the prepetition loans, the postpetition consolidated loan cannot be discharged in bankruptcy as postpetition loans are not discharged under the bankruptcy code. Dkt. No. 43. The Debtor disagreed and requested summary judgment in his favor because of a settlement he made with a

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 02/11/2020
Lori Vosejpka, Clerk, by WM

private student loan lender.  Dkt. No. 50.  The complaint is dismissed and the Debtor's motion for

summary judgment is denied for the reasons stated below.

### Background

The Debtor filed for bankruptcy on March 7, 2013.  Petition, In re Schultz, No. 13-31042

(Bankr. D. Minn. Mar. 7, 2013), Dkt. No. 1.  In Schedule F of the Debtor's Petition, the Debtor

listed over $180,000.00 in "educational debt" from 31 sources.  Id. at 15-22.  The Debtor received

a discharge on June 12, 2013, and was informed, "Most, but not all, types of debts are discharged

if the debt existed on the date the bankruptcy case was filed" and "most student loans" are not

discharged.  Order Discharging Debtor, In re Schultz, No. 13-31042 (Bankr. D. Minn. June 12,

2013), Dkt. No. 9.  On July 1, 2014, the Debtor executed a Federal Direct Consolidation Loan

Application and Promissory Note and the consolidated loan was disbursed on September 5, 2014.

Dkt. Nos. 43; 30 at 5 ("The Plaintiff consolidated all undergraduate and graduate student loans,

subsidized and unsubsidized, with the loan servicer, FedLoan Servicing, on 9/5/2014.").  The

Debtor apparently owes $203,326.93 as a result of the consolidation and interest.  Dkt. Nos. 43;

30 at 3.

On April 19, 2016, the Debtor commenced an adversary proceeding against Navient

Solutions, Inc.  Complaint, Schultz v. Navient Solutions, Inc. (In re Schultz), No. 13-31041, Adv.

No. 16-03042 (Bankr. D. Minn. Apr. 19, 2016), Dkt. No. 1.  The Debtor alleged, among other

things, that $25,000.00 in student loans made to the Debtor by Navient Solutions Inc. were

dischargeable because they were not "qualified education loans" or that the loans should be

discharged for imposing an undue hardship.  Amended Complaint, Schultz v. Navient Solutions,

Inc. (In re Schultz), No. 13-31042, Adv. No. 16-03042 (Bankr. D. Minn. Aug. 2, 2016), Dkt. No.

17 at 4, 8.  The Court granted partial summary judgment in favor of the Debtor finding that the

loans at issue did not qualify as governmental loans or nondischargeable governmental guaranteed loans under 11 U.S.C. § 523(a)(8)(A), but denied the Debtor's motion for summary judgment on the issue of whether 11 U.S.C. § 523(a)(8)(B) applied (which provides certain other types of education loans are nondischargeable).   PDF With Audio Attachment, Schultz v. Navient Solutions, Inc. (In re Schultz), No. 13-31042, Adv. No. 16-03042 (Bankr. D. Minn. Dec. 13, 2016), Dkt. No. 48.   The parties settled the case and stipulated to dismissal of the adversary proceeding with prejudice prior to a trial and without the Court ruling on the merits concerning the applicability of 11 U.S.C. § 523(a)(8)(B) and undue hardship.   Stipulation of Dismissal, Schultz v. Navient Solutions, Inc. (In re Schultz), No. 13-31042, Adv. No. 16-03042 (Bankr. D. Minn. Feb. 17, 2017), Dkt. No. 53.

The Debtor commenced this adversary proceeding against ED on April 1, 2019 seeking a discharge of more than $200,000.00 in student loan debts held by ED pursuant to 11 U.S.C. § 523(a)(8).   Dkt. Nos. 1; 30.   After finally being properly served, ED answered on October 16, 2019, raising the affirmative defense of failure to state a claim upon which relief can be granted. Dkt. No. 40.   ED moved to dismiss the case on November 25, 2019, citing Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

ED asserts that the complaint should be dismissed because the Debtor consolidated his student loans on or about July 1, 2014, for $173,438.11, with the consolidated loan disbursed on September 5, 2014, both of which occurred after the Debtor filed for bankruptcy and received a discharge.   Id. at ¶ 13; Dkt. No. 43.   ED argued that the prepetition loans were paid when the Debtor's loans were consolidated into a new consolidated loan postbankruptcy and, therefore, the

consolidated loan at issue could not be discharged by the bankruptcy proceeding as a bankruptcy discharge only discharges prebankruptcy debts.  Dkt. No. 43.

The Debtor disputed that consolidation of his loans created "a new loan obligation" because the consolidated loan has "the same terms, conditions and benefits" of his student loans prior to the consolidation.  Dkt. No. 50 at 1-2.  He also argued the consolidated loan is not a "new loan" because it is "Federally insured pursuant to [20 U.S.C.] § 1074."  Id. at 3.  The Debtor further argued the consolidated loan is not a "new obligation" because the ownership of his student loans did not change after consolidation.  As a result, he argued the debt owed to ED was not paid in full or discharged and is, therefore, a prepetition continued liability to ED.  Id. at 4.

In his memorandum in response to the motion to dismiss, the Debtor included a motion for summary judgment.  Id. at 6.  He argued that "when the Court ruled" in Schultz v. Navient Solutions, Inc. that his private student loans were nondischargeable, "they also ruled in favor of his federal loans to be dischargeable under [11 U.S.C.] § 523."  Id. at 7.  He argued the "all-or-nothing approach" applied by the Eighth Circuit dictates that his public loans be forgiven if his private loans were previously forgiven.  Id. at 6-7.

A hearing on the motion to dismiss and the Debtor's motion for summary judgment was held on December 18, 2019.  At that point, the deadline for completion of discovery had passed with a trial scheduled for January 30, 2020.  See Dkt. No. 26.  ED clarified that it was not challenging the Court's jurisdiction to decide whether the student loan debts were prepetition or postpetition debts, but instead that the Court would lack jurisdiction to discharge the student loan obligations if the Court found they are postpetition debts.  Dkt. No. 51.  The Debtor stated that he is not presently paying any amount on his consolidated loan in accordance with his repayment plan.  Id.  The Court requested ED supplement the record (which included incomplete documents)

4

with additional information regarding the student loans and consolidation to address which loans were consolidated.

ED filed an amended declaration with exhibits on December 20, 2019.  Dkt. No. 52.  The Court permitted the Debtor to respond to the amended declaration by January 10, 2020.  The Debtor did not dispute the veracity of ED's amended declaration or the attached exhibits as stated by the Debtor in his response filed on December 26, 2019 and at a hearing on January 15, 2020. Dkt. Nos. 53; 59.

The amended declaration shows that the Debtor executed a Federal Direct Consolidation Loan Application and Promissory Note on July 1, 2014, for $56,061.84 and $117,376.27. Id. at 4, ¶ 10.  The loan was disbursed on September 5, 2014, at an interest rate of 5.625%.  Id.  In a letter confirming consolidation of the loans, sent to the Debtor on September 5, 2014, the Debtor was informed, "Funds have been forwarded to the loan holders/servicers listed to pay off your previous loans." Id. at 43.  The letter lists 41 loans including: unsubsidized and subsidized federal Stafford loans; direct plus graduate loans; unsubsidized and subsidized direct loans; and, federal Perkins loans.  Id. at 44-45.  The balances were included in the consolidated loan.  Id. (The amended declaration confirms that 48 loans were taken out by the Debtor under several loan programs, five were forgiven, two are the consolidated loans which are the subject of this adversary proceeding, and the remaining 41 were consolidated.  Id. at 4.)  The loan holders and servicers of the 41 loans included Grand Canyon University, Augsburg College, Hamline University, Santa Fe University of Art and Design, Great Lakes Educational Loan Services, Sallie Mae Loan Servicing Center, the Department of Education, and New Mexico Educational Assistance Foundation.  Id. at 44-45. (In a loan spreadsheet included with the amended declaration, a notation indicates that 42.55% of the loans consolidated were "Non ED Held."  Id. at 41.)

The Debtor acknowledged in the Federal Direct Consolidation Application and Promissory Note that he agreed "to pay to the ED all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note," and he understood "that ED will send funds to the holders of the loans that I want to consolidate to pay off those loans." Id. at 8, ¶ 25. The Promissory Note indicates that the interest rate of the consolidated loan would be "based on the weighted average of the interest rates of the loans being consolidated" but would not exceed 8.25%. Id. at 10. In addition, the Debtor acknowledged a number of other terms including: the required time periods or number of payments required for loan forgiveness would start anew; the Debtor would no longer be eligible for certain benefits offered through the individual loans; and, the consolidated loan would directly pay the prior obligations. Id. at 9-10.

On January 10, 2020, the Debtor filed a "motion to amend" his response to ED's motion for dismissal. Dkt. No. 55. The motion directed the Court's attention to Smith v. Wells Fargo Educ. Fin. Servs. (In re Smith), 442 B.R. 550 (Bankr. S.D. Tex. 2010), aff'd sub nom. Educ. Credit Mgmt. Corp. v. Smith, No. CIV.A. H-11-57, 2011 WL 4625397 (S.D. Tex. Sept. 30, 2011), and argues that the consolidation of the Debtor's loans postpetition did not create a new loan obligation and, therefore, the loan is dischargeable. Id. The Debtor also included an exhibit, comprised of a Master Promissory Note under the William D. Ford Federal Direct Loan Program which appears to have been executed by the Debtor in July 2004, to demonstrate that "no difference in terms, conditions and benefits" exist between the prepetition student loans and the consolidated loan. Id. at 3, 6-8. The Debtor provides no context to the exhibit and it is unclear if a loan was ever disbursed under the 2004 note, the amount of the loan, or if the loan (if made) was included in the

6

consolidation.  ED filed a response to the motion, arguing the motion to amend should be denied.
Dkt. No. 58.

A hearing was held on the Debtor's motion on January 15, 2020.  The Court treated the
motion to amend as a post-hearing submission of relevant authority and indicated it would consider
the authority cited and attached exhibit as part of its consideration of the motion to dismiss.  Dkt.
No. 59.  The Debtor confirmed that he did not object to the exhibits submitted by ED in its amended
declaration and that he believed those exhibits to be accurate.  Id.  The Court then took the motions
under advisement.

## Jurisdiction

As a threshold issue, and despite ED's clarification regarding its Fed. R. Civ. P. 12(b)(1)
challenge and agreement that the Court has subject matter jurisdiction, subject matter jurisdiction
will be considered.  The existence of subject matter jurisdiction is a threshold issue that must be
addressed prior to the merits of the underlying claims.  Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 94-95 (1998).  Absent subject matter jurisdiction, a court must dismiss the action.  Fed.
R. Civ. P. 12(h)(3); Evans v. B.F. Perkins Co., 166 F.3d 642, 653 (4th Cir. 1999).  Dismissal for
lack of subject matter jurisdiction is proper under Fed. R. Civ. P. 12(b)(1) when the Court lacks
statutory or constitutional authority to adjudicate the matter.  See Makarova v. United States, 201
F.3d 110, 113 (2d Cir. 2000).

This Court has jurisdiction to determine the dischargeability of a debt under 28 U.S.C.
§ 1334(b), which, subject to certain exceptions, confers on the district courts original but not
exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case
under title 11.  The determination of dischargeability under section 523 is a case arising under title
11 and, thus, the Court has subject matter jurisdiction.  Deitz v. Ford (In re Deitz), 469 B.R. 11,

17 (B.A.P. 9th Cir. 2012), aff'd, 760 F.3d 1038 (9th Cir. 2014). Jurisdiction has been referred to

bankruptcy judges of the district court under 28 U.S.C. § 157(a).

The dischargeability of a debt is a core proceeding within the meaning of 28 U.S.C. §

157(b)(1) and (b)(2)(I). A case concerning the determination of the dischargeability of a debt may

be filed "at any time." Fed. R. Bankr. P. 4007(b); accord Walker v. Sallie Mae Servicing Corp.

(In re Walker), 427 B.R. 471, 477-79 (B.A.P. 8th Cir. 2010) (concluding dischargeability of a

student loan debt may be determined after discharge is granted). Thus, the bankruptcy court has

authority to enter a final judgment concerning a determination of the dischargeability of a debt.

28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all

core proceedings arising under title 11, or arising in a case under title 11, referred under subsection

(a) of this section, and may enter appropriate orders and judgments, subject to review under section

158 of this title."). In any event, both parties consented to the entry of a final order or judgment

by this Court. Dkt. Nos. 31 at 5, ¶ 6; 40 at 2, ¶ 2.

Accordingly, this Court has subject matter jurisdiction and the ability to enter a final

judgment on whether the consolidated student loan is dischargeable and whether the loan is a

prepetition or postpetition debt.

## **Legal Standard**

ED moved to dismiss the claim under Fed. R. Civ. P. 12(b)(6), which is made applicable

to this adversary proceeding by operation of Fed. R. Bankr. P. 7012(b). Under Fed. R. Civ. P.

12(b), a motion to dismiss based on Fed. R. Civ. P. 12(b)(6) "must be made before pleading if a

responsive pleading is allowed." Here, ED filed its answer and affirmative defenses, including

failure to state a claim, prior to bringing its motion to dismiss. To the extent ED's motion to

dismiss was untimely, the Court will treat it as a motion for judgment on the pleadings under Fed.

R. Civ. P. 12(c). Motions for judgment on the pleadings are generally reviewed under the same standard as a Fed. R. Civ. P. 12(b)(6) motion. In re Pre-Filled Propane Tank Antitrust Litig., 893 F.3d 1047, 1056 (8th Cir. 2018); Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). As the analysis under Fed. R. Civ. P. 12(b)(6) and 12(c) are virtually identical, the Debtor suffers no prejudice from the Court's treatment of the motion to dismiss as a motion for judgment on the pleadings.

In order to survive a challenge under Fed. R. Civ. P. 12(b)(6) or 12(c), "[t]he complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Detroit Gen. Ret. Sys. v. Medtronic, Inc., 621 F.3d 800, 804-05 (8th Cir. 2010) (quotations omitted). The court is required to accept as true all factual allegations of the complaint, drawing all reasonable inferences in favor of the nonmoving party. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). The allegations must be sufficient to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss or a motion for judgment on the pleadings, "[t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (quotation omitted); see Smithrud v. City of St. Paul, 746 F.3d 391, 395 (8th Cir. 2014) (indicating a court may consider materials that "do not contradict the complaint"); Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (applying this standard to a motion for judgment on the pleadings).

Here, the Court has considered the pleadings of the parties, the public record of the Debtor's bankruptcy case and his prior adversary proceeding, and documents necessarily embraced by the pleadings which do not contradict the Debtor's factual allegations. Specifically, the Court considered: the declaration and amended declaration; the attachments thereto; and, the exhibit filed by the Debtor with his motion to amend his response. To the extent consideration of the declaration and attachments are necessary to the decision, the Court may consider them if summary judgment would be appropriate. Fed. R. Civ. P. 12(d).

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it may affect the outcome of the lawsuit and it is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016). The moving party bears the burden of establishing a lack of genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed. R. Civ. P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleadings, but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial. Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987).

**Discussion**

**I.  The Complaint Must Be Dismissed.**

A discharge in bankruptcy only discharges debts of the debtor that arise prebankruptcy.  11 U.S.C. §§ 524(a), 727(b).  Debts that arise postpetition are not discharged by the bankruptcy.  11 U.S.C. § 727(b).  Prepetition student loan debts are not discharged in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents" and the debts qualify as educational loans or certain educational obligations.  11 U.S.C. § 523(a)(8).  Therefore, unless a debtor can satisfy the requirements of section 523(a)(8) by proving that an undue hardship would result if the debts are not discharged, prepetition student loans are not discharged.

The Debtor's complaint seeks a discharge of his consolidated student loan, arguing payment of it presents an undue hardship to him.  ED argued that the Debtor's postpetition consolidation of his 41 prepetition loans by eight lenders or servicers into a loan held by ED paid his prepetition loans and resulted in a new postpetition obligation that cannot be discharged under section 727.  In the complaint, the Debtor admitted that he consolidated his student loans after he filed for bankruptcy and after a discharge was granted.  Dkt. No. 30 at 4, 5.

**A.  Case Law Supports Finding That The Consolidated Loan Is A Postpetition Debt.**

Previous versions of 11 U.S.C. § 523(a)(8) allowed a qualifying educational loan to be discharged if the loan first became due five or seven years before the bankruptcy case was filed. Pub. L. No. 95-598, 92 Stat. 2591 (1978); Pub. L. No. 101-647, § 3621, 104 Stat. 4964 (1990).  In a number of cases, there was an issue as to whether the commencement of the five- or seven-year period started over again if a new consolidated loan paid previous loans.  The courts consistently held that the consolidated loan started the five- or seven-year period anew because the consolidated

loan paid the prior loans. See Hiatt v. Ind. State Student Assistance Comm'n, 36 F.3d 21, 23 (7th Cir. 1994); Rudnicki v. S. Coll. of Optometry (In re Rudnicki), 228 B.R. 179, 181 (B.A.P. 6th Cir. 1999); Martin v. Great Lakes Higher Educ. Corp. (In re Martin), 137 B.R. 770, 773 (Bankr. W.D. Mo. 1992) ("By definition, the consolidation loan was a new loan. It had different, more favorable, repayment terms than the old note. It was from a different lender and it discharged the old loans."); Saburah v. U.S. Dep't of Educ. (In re Saburah), 136 B.R. 246, 252 (Bankr. C.D. Cal. 1992); accord Resurrection Med. Ctr. v. Lakemaker (In re Lakemaker), 241 B.R. 577, 581 (Bankr. N.D. Ill. 1999) ("A consolidation loan is considered to be a new loan which pays the balances owed on previous loans, extinguishing the original loans and all rights and duties thereunder, and creating new rights and obligations in the new loan."); Pa. Higher Educ. Assistance Agency v. McKinney (In re McKinney), No. 1:90CV1946, 1992 WL 265992, at *2 (N.D. Ohio May 12, 1992). The logic of these cases applies in this case as the postpetition consolidated loan paid the prepetition loans.

Congress removed the seven-year loan discharge provision by amendment to section 523(a)(8) in 1998, providing qualified educational loans could only be discharged if an undue hardship existed no matter how old the educational loans. Pub. L. No. 105-244, § 971, 112 Stat. 1837 (1998). The courts interpreting the post-1998 section 523(a)(8) have held, consistent with the pre-1998 section 523(a)(8) courts, that a postpetition consolidation of loans discharges the pre-consolidation loans and creates a new postpetition obligation which cannot be discharged. See Educ. Credit Mgmt. Corp. v. McBurney (In re McBurney), 357 B.R. 536, 538-39 (B.A.P. 9th Cir. 2006) (concluding that a postpetition consolidation of student loans is a new loan not subject to discharge); Grubin v. Sallie Mae Servicing Corp. (In re Grubin), 476 B.R. 699, 709 (Bankr. E.D.N.Y. 2012) ("It is settled that, where a debtor incurs student loan debt pre-petition, but then enters into a post-petition agreement to consolidate that debt, the consolidation agreement

extinguishes the pre-petition debt and gives rise to new, post-petition debt."); Clarke v. Paige (In re Clarke), 266 B.R. 301, 309 (Bankr. E.D. Pa. 2001) ("Nothing in § 523(a)(8) excepts post-petition education debt, even where it may place an undue hardship upon the debtor."); Hughes v. Am. Educ. Servs. (In re Hughes), No. 11-01933, Adv. No. 11-00116, 2012 WL 6055464, at *3 (Bankr. N.D.W. Va. Dec. 6, 2012) ("When a debtor enters into consolidation under FFELP after filing bankruptcy, the consolidation loan discharges the prepetition student loan debt and a postpetition debt arises."), aff'd sub nom. Hughes v. Am. Educ. Servs., No. 1:13CV108, 2013 WL 4806228 (N.D.W. Va. Sept. 9, 2013); Page v. Registrar Office Ball State Univ. (In re Page), No. 02-14503-JKC-7, Adv. No. 11-50390, 2012 WL 5985227, at *3 (Bankr. S.D. Ind. Nov. 29, 2012). Therefore, courts have long held that an educational loan consolidation discharges the previous educational loans and if consolidation occurs postpetition, it creates a new postpetition obligation that cannot be discharged.

The Debtor argued the consolidated loan is dischargeable because the ownership of the loan "never changed," as ED "is the current and previous owner" of his student debt. Dkt. No. 50. Courts that have considered this issue have concluded that the fact that the lender of a prepetition debt is the same lender of a consolidated postpetition debt does not make the consolidated loan a prepetition debt. See, e.g., Hull v. Fleet Bank (In re Hull), 223 B.R. 876, 878-79 (Bankr. W.D.N.Y. 1998) (rejecting argument that a postpetition consolidated student loan was dischargeable because "there was no new lender involved in the [c]onsolidation [l]oan"); Stephenson v. U.S. Dep't of Educ./Nelnet, No. 1:17CV262, 2018 WL 1585671, at *10 (M.D.N.C. Mar. 28, 2018) ("Nor is the Court persuaded by Appellant's argument that her Consolidation Loan should be dischargeable because Dept. of Ed. held both the pre-petition and the consolidated post-petition debt.").  As the

Debtor alleged postpetition consolidation in the complaint, the logic of these cases requires judgment in favor of ED on the pleadings.

In any event, the undisputed declaration and attachments show that the Debtor's loans were not held solely by ED prior to the consolidation.  As a result, his argument that ownership of the loans did not change after consolidation is not accurate by his own admission since he ultimately agrees 41 loans held by multiple lenders and servicers were consolidated, as shown by the Federal Direct Consolidation Application and Promissory Note and the letter confirming consolidation. Dkt. No. 52 at 7-19, 43-45.  As this conclusion requires consideration of the declaration and attachments outside the pleadings, summary judgment is appropriate because there is no genuine issue of material fact that there were 41 loans and multiple lenders.

The Debtor cites Smith v. Wells Fargo Educ. Fin. Servs. (In re Smith), 442 B.R. 550, 552 (Bankr. S.D. Tex. 2010), to argue that the consolidated loan is not a new loan obligation because the loan carries all of the same terms, conditions, and benefits and without an additional advance of money—factors discussed in Smith.  In Smith, the Bankruptcy Court for the Southern District of Texas considered whether a consolidated student loan obligation was created prepetition or postpetition and whether the debtor was entitled to a hardship discharge of the consolidated loan obligation. 442 B.R. 550.  A contested factual issue in the case was the timing of the consolidation. The debtor argued she had completed and sent the consolidation paperwork prior to her bankruptcy filing.  Id. at 553.  Wells Fargo argued the consolidation did not occur until after the Debtor filed for bankruptcy.  Id.  The court found "that Debtor did not apply for a consolidation loan subsequent to filing her bankruptcy petition."  Id.  Thus, the Court held consolidation occurred prepetition and the consolidated loan was a prepetition obligation subject to discharge.

The court described its holding on the unique circumstances of the case as:

> The Court holds that Bankruptcy Code § 524(c) applies to a student loan consolidation if (i) the consolidation was requested and apparently effected prior to bankruptcy, (ii) all of the loans that were consolidated are dischargeable under § 523(a)(8), (iii) the consolidation is nothing more than a bookkeeping entry on the lender's books, <u>and</u> (iv) there are no new advances, refinancing by a new lender, or other material modification of the loan.

<u>Id.</u> at 557 (emphasis added).  On appeal, the District Court for the Southern District of Texas affirmed on the sole ground that the bankruptcy court did not err when it concluded that the Debtor consolidated her loans prior to filing for bankruptcy and, thus, the loans were subject to discharge as prepetition loans.  <u>Educ. Credit Mgmt. Corp. v. Smith</u>, No. CIV.A. H-11-57, 2011 WL 4625397, at *4 (S.D. Tex. Sept. 30, 2011).  The <u>Smith</u> case, involving prepetition consolidation, is not like this case or the numerous cases cited above where it is undisputed that consolidation occurred postpetition giving rise to the prepetition debt being paid and a new postpetition obligation not subject to discharge. Wells Fargo, in <u>Smith</u>, simply did not consolidate the debtor's loans postpetition.

The bankruptcy court in <u>Smith</u> speculated how the outcome of the case might have differed if the loans were consolidated postpetition, but this discussion is dicta as the court clearly found that the consolidation occurred prepetition.  Moreover, the court limited its decision to the unique set of facts before the court, as indicated in its holding.  <u>See</u> 442 B.R. at 557.  The undisputed facts of the Debtor's case differ significantly from the facts of <u>Smith</u>.  The Debtor agrees in his complaint that consolidation occurred after his bankruptcy filing.  Further, there is no genuine issue of material fact that the consolidation in this matter was not solely a consolidation of loans held by ED, but by multiple lenders and servicers.  <u>See</u> Dkt. No. 52 at 44-45.  Specifically, <u>Smith</u>, considered it significant that "no new lender advance[d] funds to pay off the pre-petition lender." 442 B.R. at 556.  In the Debtor's case, although ED held some of the Debtor's prepetition student

loans, it is undisputed others were held by the universities attended by the Debtor and ED paid off

those old loans upon consolidation.  Dkt. No. 52 at 43-45.  In <u>Smith</u>, there is no indication that the

debtor acknowledged that the consolidated loan would pay off the remaining balances of the

preexisting loans.  Here, the Debtor acknowledged in the Federal Direct Consolidation Application

and Promissory Note that the loan would pay off the loans being consolidated.  An undisputed

postconsolidation letter to the Debtor states, "Funds have been forwarded to the loan

holders/servicers listed to pay off your previous loans."  Dkt. No. 52 at 43.  As a result, the

reasoning of <u>Smith</u> is simply not applicable to the Debtor's case.  Further, to the extent <u>Smith</u> is in

conflict with the numerous other cases that have held that a postpetition consolidation is not

discharged, this Court adopts the approach of the numerous cases cited above.

      The Debtor argued that the original loans and the consolidated loan contain all the same

terms, conditions, and benefits, similar to <u>Smith</u>.  This is directly in contradiction with the

undisputed language of the Federal Direct Consolidation Application and Promissory Note signed

by the Debtor in 2014.  It provides that the required time periods or number of payments required

for loan forgiveness would start anew, the Debtor would no longer be eligible for certain benefits

offered through the individual loans, and the consolidated loan would directly pay the prior

obligations.  Dkt. No. 52 at 10.  The Debtor attached an exhibit to his motion to amend to show

that the consolidated loan has the same terms, conditions, and benefits as his prior loans.  Dkt. No.

55 at 3, 6-8.  The exhibit is a Master Promissory Note under the William D. Ford Federal Direct

Loan Program and appears to have been executed by the Debtor in July 2004.  <u>Id.</u> at 6.  However,

the Debtor provides no context to the exhibit, and it is unclear if a loan was ever disbursed under

the 2004 note or if the loan (if made) was included in the consolidation.  It does not address all 41

loans. Therefore, it does not create a genuine issue of material fact that there were no different terms and conditions.

Case law is clear that a postpetition consolidation pays a prepetition loan and is a new debt even if the lender remains the same. To the extent it is relevant, there is no genuine issue of material fact that, in this case, the prepetition lender was at least partially different from the postpetition lender and there are different terms and conditions in the postpetition loan.

### B. Statutes and Regulations Support Finding That The Consolidated Loan Is A Postpetition Debt.

Statutes and regulations support that a postpetition consolidated student loan is a new debt. The Bankruptcy Court for the Eastern District of Pennsylvania in <u>Clarke</u> and other courts that have found postpetition consolidated student loans to be nondischargeable student loans have to some degree relied upon 20 U.S.C. §§ 1078-3 and 1074. 266 B.R. at 307. The courts based their decision, in part, on language which stated that consolidated loans under the Federal Family Education Loan (FFEL) program, 20 U.S.C. § 1071, et seq., were "new loans." Section 1078-3(e) states, "Loans made under [section 1078-3] which are insured by the Secretary shall be considered to be new loans made to students for the purpose of section 1074(a) of this title." 20 U.S.C. § 1078-3. This language is cited by ED in support of its argument that the consolidated loan is a new loan as a matter of law.

However, in 2010 Congress discontinued the issuance of new loans (including consolidated loans) under the FFEL program and the FFEL's program of insuring newly issued loans. 20 U.S.C. § 1071(d). The Federal Direct Loan Program, through which the federal government directly issued student loans rather than guaranteeing or insuring loans as had occurred through the FFEL program, became the principal program for new non-privately issued student loans. <u>See generally Student Loan Servicing All. v. District of Columbia</u>, 351 F. Supp. 3d 26, 38 (D.D.C. 2018);

17

Corletta v. Tex. Higher Educ. Coordinating Bd., 531 B.R. 647, 652 n.1 (W.D. Tex. 2015);  Okla.

Firefighters Pension & Ret. Sys. v. Student Loan Corp., 951 F. Supp. 2d 479, 484 (S.D.N.Y. 2013).

Under the Federal  Direct Loan Program, loans are issued by the federal government or by

institutions that have agreements with the government to originate loans. 20 U.S.C. § 1087a.

The Federal Direct Loan Program permits consolidation of loans, including with loans

made under the FFEL program.  20 U.S.C. § 1087e(g).  The federal regulations governing the

Federal Direct Loan Program, which were in effect at the time the Debtor applied to consolidate

his loans and at the time the consolidated loan was made, provide: "Loans consolidated into a

Direct Consolidation Loan are discharged when the Direct Consolidation Loan is originated."  34

C.F.R. § 685.220(a).  The regulations make it clear that as a matter of law prior loan holders are

paid an amount to discharge the loan and the consolidated loan is equal to the sum of the amounts

paid to the holders of the consolidated loans.  34 C.F.R. § 685.220(f).  These regulations mean that

the Debtor's 41 loans were discharged in 2014 and the only remaining loan was the newly created

consolidated loan.  The regulations likewise provide that the repayment period for a consolidated

loan begins on the day the loan is disbursed.  34 C.F.R. § 685.220(i)(1).  It is undisputed that the

Debtor's consolidated loan was disbursed after he filed for bankruptcy and received his discharge.

Therefore, the consolidated loan is a separate loan from the original student loans with a separate

repayment period that began on September 5, 2014.  As a postpetition debt, the consolidated loan

is not dischargeable under 11 U.S.C. § 727.

Finally, the Debtor argued,

> The Plaintiff's consolidation loan(s) were disbursed on September
> 5, 2014 and are considered Federally insured pursuant to § 1074.
> Thus, loans disbursed before October 1, 2014 cannot be considered
> "new loans"; The Plaintiff, by obtaining loans prior to June 30,
> 2010, was considered an enabled student borrower and his 2014

consolidation loan(s) cannot be considered a "new loan" because it
falls within the scope of § 1074 as being Federally insured.

It appears the Debtor takes issue with language from section 1078-3(e) which states, "Loans made

under this section which are insured by the Secretary shall be considered to be <u>new loans</u> made to

students for the purpose of section 1074(a) of this title." (emphasis added).  Section 1074(a) limits

the total amount of new loans made to students which are covered by federal loan insurance to

$2,000,000,000.00 for loans disbursed on or before June 30, 2010.  Section 1078-3(e), therefore,

limits the sum of consolidated loans, as new loans pursuant to section 1078-3(e), and other new

loans under the FFEL program made prior to June 30, 2010 to $2,000,000,000.00.  This provision

does not appear to apply to consolidated loans made under section 1087e and the Federal Direct

Loan Program, the loan consolidation program utilized by the Debtor in 2014.  Further, the Debtor

fails to explain how this statute proves the consolidated loan did not pay the previous loans.

Therefore, the Debtor's arguments concerning whether his loans were insured or not pursuant to

section 1074 under the FFEL program are without merit and irrelevant.  The consolidated loan,

made under the Federal Direct Loan Program, operated to discharge the Debtor's previous student

loans, creating a new loan with new terms without reference to section 1074.  See 34 C.F.R.

§ 685.220.

As a result, the loan at issue in this case arose postpetition as it paid the prepetition loans

as clearly provided under federal law.  The consolidated loan, as a postpetition debt, cannot be

discharged.

**II.  The Debtor's Summary Judgment Motion Is Denied.**

In his memorandum, the Debtor moves for summary judgment.  The Debtor argued that

his previous adversary proceeding, <u>Schultz v. Navient Solutions, Inc.</u>, involving private student

loans should have discharged the loans which are the subject of this proceeding under the "all-or-

19

nothing" approach.  The Debtor cites <u>Martin v. Great Lakes Higher Educ. Grp. (In re Martin)</u>, 584

B.R. 886 (Bankr. N.D. Iowa 2018); <u>Conway v. Nat'l Collegiate Tr. (In re Conway)</u>, 495 B.R. 416

(B.A.P. 8th Cir. 2013), <u>aff'd</u>, 559 F. App'x 610 (8th Cir. 2014); and <u>Hawkins v. Buena Vista Coll.</u>

<u>(In re Hawkins)</u>, 187 B.R. 294 (Bankr. N.D. Iowa 1995), for the proposition that the consolidated

loan is required to be discharged because the private loans that were the subject of the prior

adversary proceeding were discharged.  The cases cited by the Debtor provide that "a bankruptcy

court can find that some loans are discharged while repayment of one or more others does not

constitute an undue hardship."  <u>Conway</u>, 495 B.R. at 423; <u>Martin</u>, 584 B.R. at 890-91 ("The Court

must determine whether each loan, separately, imposes an undue hardship and may discharge some

loans while declining to discharge others.").  The Debtor's argument that the consolidated loan

with ED should be discharged under the "all-or-nothing" approach because of the outcome of his

previous adversary proceeding with Navient Solutions, Inc. is unpersuasive and not supported by

the cases he cites.  There is simply no support for the argument that the discharge of one

educational loan of a creditor discharges educational loans of other creditors.

Even if the cases cited by the Debtor did provide that a judicial discharge of one loan can

operate to discharge the loans of other creditors, this Court in <u>Schultz v. Navient Solutions, Inc.</u>,

never reached the merits of the undue hardship complaint.  The parties agreed to dismiss the

complaint without a judicial determination regarding the dischargeability of the loans.  Therefore,

this Court never reached a decision on whether the Debtor was entitled to a discharge of any of his

loans on the basis of undue hardship and could not discharge other loans even under the Debtor's

theory.

Nevertheless, the Debtor argued that the prior adversary proceeding "ruled favorably that

Plaintiff's Private student loans where [sic] considered 'non-qualified educational loans' and

dischargeable in bankruptcy court." Dkt. No. 50 at 6. As discussed above, there was no final

"ruling" in the previous case. In order for a decision in one case to apply to another, res judicata

or collateral estoppel must apply.

### A.  Res Judicata Is Inapplicable.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second

suit involving the same parties or their privies based on the same cause of action." Parklane

Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). "When the parties to a previous lawsuit agree

to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for

purposes of res judicata." Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999). Res judicata

does not apply for the simple reasons that ED is not the same party or in privity with Navient

Solutions, Inc. and the loans that were the subject of the prior adversary proceeding are not the

same loans at issue here. Therefore, the prior agreement regarding the dischargeability of the

Debtor's loans with Navient Solutions, Inc. and dismissal of that adversary proceeding does not

operate to bind ED or this court from deciding the dischargeability of the Debtor's consolidated

loan with ED.

### B.  Collateral Estoppel Is Inapplicable.

Collateral estoppel is applicable to bar litigation of an issue when "(1) the issue sought to

be precluded is identical to the issue previously decided; (2) the prior action resulted in a final

adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with

a party to the prior action; and (4) the party sought to be estopped was given a full and fair

opportunity to be heard on the issue in the prior action." Wellons, Inc. v. T.E. Ibberson Co., 869

F.2d 1166, 1168 (8th Cir. 1989). However, a settlement agreement resulting in a consent judgment

generally "has no issue-preclusive effect unless it is clearly shown that the parties intended to

foreclose a particular issue in future litigation." U.S. v. Brekke, 97 F.3d 1043, 1049 (8th Cir.

1996). For the same reasons that res judicata does not apply to this adversary proceeding, collateral

estoppel does not apply. First, ED was not a party to the lawsuit or the settlement agreement

resolving the prior adversary proceeding or in privity with Navient Solutions, Inc. Second, ED

was not given a full and fair opportunity to be heard in the prior adversary proceeding because it

was not a party to the previous adversary proceeding. And third, no final adjudication on the

merits resulted from the final adversary proceeding because the case settled without a judicial

determination concerning dischargeability. The settlement agreement between the Debtor and

Navient Solutions, Inc. and the voluntary dismissal of that adversary proceeding could not operate

to bar ED from claiming that its consolidated loan with the Debtor is nondischargeable. The

Debtor's motion for summary judgment must be denied.

### Conclusion

Considering the complaint in the light most favorable to the Debtor, and accepting all of

the factual allegations contained in the Complaint as true, the Debtor has failed to state a claim

upon which relief can be granted and the Complaint must be dismissed under Fed. R. Bankr. P.

7012 or, alternatively, Fed. R. Bankr. P. 7056. 11 U.S.C. §§ 524, 727. First, as the statutes,

regulations, and case law make clear, even if all of the loans were held by ED prior to

consolidation, the postpetition consolidation paid the prepetition loans creating a new postpetition

debt which cannot be discharged. Accordingly, judgment in favor of ED on the pleadings, which

acknowledge the postpetition consolidation, is appropriate. See Dkt. No. 30 at 5. Second, if the

declaration and attachments are necessary to show that: (1) the prepetition debt consisted of 41

loans held by several parties; (2) the postpetition consolidated debt had different terms and

conditions from the prepetition loans; and (3) the Debtor acknowledged the payment of the

prepetition loans, summary judgment is appropriate as there is no genuine issue of material fact on these points.  <u>See</u> Dkt. No. 52 at 7-19, 43-45.  Finally, summary judgment in favor of the Debtor is not appropriate as it is clear his resolution with a different private lender in no way binds ED. As a result, the postpetition loan paid the prepetition loans and the postpetition consolidated loan cannot be discharged.[1]

### <u>ORDER</u>

For the reasons stated above,

**IT IS HEREBY ORDERED:**

1. The Defendant U.S. Department of Education's motion to dismiss treated as a motion for judgment on the pleadings is GRANTED.

2. The Plaintiff William Arnold Schultz's summary judgment motion is DENIED.

3. The Complaint is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

By the Court:

Dated: <u>February 11, 2020</u>

/e/ William J. Fisher
_____
William J. Fisher
United States Bankruptcy Judge

---

[1] Of course, the postpetition consolidated loan could potentially be discharged in a future bankruptcy.  <u>See</u> <u>Page</u>, 2012 WL 5985227, at *4 (recognizing a debtor "is free to file another bankruptcy case" in the future and seek a discharge of the consolidated loan under section 523(a)(8)).  This case was filed on March 7, 2013.  Section 727(a)(1) prohibits a discharge in a case commenced within 8 years of the filing of a previous case in which the debtor received a discharge.  Thus, the Debtor is not without a potential remedy in the near future and he acknowledges he is not required to pay any amount on the loans pursuant to the terms of his repayment plan at this time.